[Crim. No. 3598.    First Dist., Div. One.    Dec. 14, 1959.]

THE PEOPLE, Respondent, v. BERNARD JOSEPH
MARINO, Appellant.

Myron B. Haas, under appointment by the District Court
of Appeal, and Twohig, Weingarten & Haas for Appellant.

Stanley Mosk, Attorney General, and Peter T. Kennedy,
Deputy Attorney General, for Respondent.

TOBRINER, J.—Convicted of violation of Penal Code, section 4501, in that he assaulted one Hempstead with a deadly weapon while serving a sentence of less than life at Soledad State Prison, appellant claims prejudicial error in the trial because the state introduced in its rebuttal, instead of principal, case, certain testimony of appellant's presence at the place of the crime. We do not believe the trial court's ruling erroneous, or, if erroneous, prejudicial. Since the issue here involves a question of the order of proof, we analyze the evidence in the threefold aspect of the state's case in chief, appellant's case in chief, and the state's evidence in rebuttal.

The state's case in chief sought to prove that appellant, an inmate at Soledad State Prison, knifed one Hempstead, another inmate, on May 24, 1958. The previous day, according to the testimony of inmate Johnson, appellant and Hempstead engaged in a fight and appellant reputedly said, ''I'll get you, man.''

On the day of the knifing at about 3 to 3:30 p. m. approximately 30 inmates were watching television in the TV room of wing D. Hempstead testified that appellant ''came up, touched me on the shoulder, and . . . when I looked around he stuck me in the back . . . I . . . looked around again . . . and he was running out the door.'' Hempstead ran out into the adjoining corridor and saw appellant standing in the corridor some distance away.

Inmate Allen testified that he heard a noise, looked up, saw a man five to 10 feet away running out of the TV room, but that he could see no more than the back of the man's head. Later Allen viewed pictures showing a full and side view of appellant; Allen testified that ''from his side of his head'' the photographs portrayed the person whom he saw running out; and that the ''guy in the picture was Marino.'' However, Allen also testified that he could not ''recollect'' ever seeing appellant before; that he could not identify appellant as the assailant by '' [l]ooking at him from his face.''

Testimony of appellant's defense that he was not present in the TV room came in during the principal case. Denzel Smith, an investigator for the Monterey District Attorney, stated that he had interviewed appellant after the knifing. At this time appellant denied to Denzel that he was in the TV room on May 24th.

Appellant's case in chief consisted of the testimony of inmate Jackson that on May 24, 1958, at about 3 p. m. some friends and he were conversing in the corridor when appellant

approached from a direction opposite to that of the TV room. Appellant joined them, remaining with them for a short period of five to 10 minutes. Then appellant started to leave. When he had gone about 10 feet in a direction opposite to that of the TV room, Jackson asked him to wait. At this moment they heard a commotion; Hempstead ran by Jackson and the group; then past appellant. At this time, according to Jackson, the corridor was full of people. And inmate Sapp gave testimony almost identical to that of Jackson.

Appellant himself testified that, having come across them while walking towards wing D, he joined Jackson and Sapp for about 10 minutes in the corridor. When he started to leave, Jackson asked him to wait; at this time they heard a commotion, and Hempstead, with a knife in his back, ran by them. Appellant denied that he was in wing D or its TV room on May 24, 1958. Appellant likewise stated that the corridor was full of people on the afternoon of May 24; "it was a Saturday afternoon, you don't work then."

After appellant testified, the defense rested. The state immediately presented its rebuttal. Despite appellant's objection that the testimony should have been introduced in the prosecution's case in chief and not in rebuttal, the prosecution adduced testimony of inmate Belias that at 3 on May 24, 1958, he was on the second floor of wing D and could see the entrance to the TV room; that he saw appellant enter the TV room from the corridor and also saw him walk out "rather hurriedly."

The determination of the case turns on the single question whether the introduction of the rebuttal testimony of Belias that he saw appellant enter the TV room constituted prejudicial error, in that it violated the requirements of section 1093 of the Penal Code. The section provides in part that "the trial must proceed in the following order, unless otherwise directed by the court: . . . 2. . . . the people, must open the cause and offer the evidence in support of the charge. 3. The defendant or his counsel may then open the defense, and offer his evidence in support thereof. 4. The parties may then respectively offer rebutting testimony only, unless the court, for good reason, in furtherance of justice, permit them to offer evidence upon their original case."

The issue of the introduction of proof on rebuttal alleged to be in improper order recalls the requirements for rigid procedure of a past era in American legal history. In the frontier community where opportunities for amusement were limited, the courthouse often took the role of the play-

house. Spectators demanded that the performance of the opponents conform to fixed and known rule. A party could not take advantage of his adversary by introducing in act three, which was reserved for rebuttal, that which should have come in during act one, which served for the presentation of the case in chief. Courts of today are concerned less with the drama of a contest than with the objective of adjudicating the issue in an orderly fashion, in protecting each party against surprise maneuver of the other, and in realistically preserving the opportunity for full and fair presentation.

Tested by these objectives we find neither error nor prejudice to appellant in the introduction of the testimony. The lack of error becomes apparent when we distinguish the proof involving the knifing from that as to physical location of appellant. The latter became a vital issue, not in the principal case of the prosecution, but only after appellant, in the defense case, denied being in the TV room. Before that denial, two witnesses, the victim and Allen, placed him in the room, but the probative value of that testimony was slight because 30 other people were there, too. Slighter, indeed, would be the value of testimony that he entered or left the room. But the value of the latter testimony becomes highly probative when two witnesses testify appellant was *not* in the TV room. Under these circumstances we do not find that the trial court abused its discretion in permitting the prosecution to rebut that testimony. No carry-over from past adherence to the ''sporting theory'' of procedure required so rigid an application of Penal Code, section 1093.

Two recent cases have sanctioned the introduction upon rebuttal of testimony refuting an alibi, although proof of defendant's presence at the place of the crime is necessarily a first element of the principal case. In *People* v. *Williams* (1958), 164 Cal.App.2d 285 [330 P.2d 942], the prosecution in cross-examining defendant asked him whether he had admitted to the police officers that he had been at ''McDonald's [drive-in] on the 24th of May,'' the night of the robbery. Defendant denied the admission. The court points out: ''In rebuttal Officer Griffin testified that on June 20 defendant told him he had been at McDonald's drive-in on May 24th in the early morning hours. Counsel . . . objected on the ground that this evidence was part of the prosecution's case in chief.'' (P. 291.) In upholding the admissibility of the rebuttal testimony, the court states, ''It cannot be said at bar that there was any impropriety in the prosecutor's procedure.

He had made a clear case before resting. It was not necessary for him to anticipate and disprove every possible defense or alibi of the defendant. The evidence under discussion was directed toward defendant's alibi.'' (P. 292.)

In the second case, *People* v. *Nye* (1951), 38 Cal.2d 34 [237 P.2d 1], the trial court permitted introduction of rebuttal proof of defendant's presence at the scene of the crime at a particular time. There the court found defendant guilty on two counts of assault with intent to commit rape, one, on Miss W on May 7, 1950, and the other, on Mrs. P on May 27, 1950. In affirming, the Supreme Court said: ''In the prosecution's case in chief, . . . [t]he two prosecuting witnesses testified regarding defendant's conduct in their bedrooms. Defendant then testified in his own behalf and offered evidence of an alibi, claiming that he had never seen the two women before the preliminary examination. . . . On rebuttal . . . Miss F testified that the defendant had entered her bedroom on May 7th and May 27th, the dates of the two assaults.'' (Pp. 38-39.)

Appellant principally relies upon *People* v. *Carter* (1957), 48 Cal.2d 737 [312 P.2d 665], a case which condemns the deliberate withholding of evidence by the prosecution for the purpose of a later introduction. In analyzing Penal Code, section 1093, the Carter decision reads: ''The purpose of the restriction in that section is to assure an orderly presentation of evidence so that the trier of fact will not be confused; to prevent a party from unduly magnifying certain evidence by dramatically introducing it late in the trial; and to avoid any unfair surprise that may result when a party who thinks he has met his opponent's case is suddenly confronted at the end of trial with an additional piece of crucial evidence.'' (P. 753.) The instant case, however, compares closely to that of Williams, *supra* (1958), 164 Cal.App.2d 285, wherein the court distinguished Carter. Here, as we have pointed out, the prosecution witnesses in the principal case placed appellant in the TV room, thus laying the original ground for a position which the prosecution necessarily assumed. When respondent controverted it with an additional rebuttal witness, appellant could hardly have been unfairly surprised. The situation here does not parallel Carter in which the prosecution withheld ''crucial evidence,'' an exhibit of a red cap, from the case in chief for the purpose of subsequent introduction on rebuttal for a planned and dramatic impact.

Appellant's remaining cases are distinguishable. Thus in *People* v. *Chessman* (1959), 52 Cal.2d 467 [341 P.2d 679],

the Supreme Court noted that, ''[W]e cannot see how defendant was prejudiced by the order of proof here. . . . It does not appear that defendant was surprised or hindered in his defense [by the attacked rebuttal evidence of the State]. . . .'' (P. 593.)

*People* v. *Wein* (1958), 50 Cal.2d 383 [326 P.2d 457], does not support appellant's position. Alluding to the defendant's attack on certain rebuttal evidence [concerning fingerprints of defendant] the Supreme Court stated, ''Again we come to the question whether the district attorney or his aids indulged in a proscribed withholding of matter properly belonging in their case in chief. . . . An affirmative answer seems possible. However, under the facts of this case, a reversal is not warranted. To the extent that defendant may have been unfairly surprised, this was obviated by the granting of his request for additional time to meet this testimony. The fingerprint was probably not unduly magnified in significance, since it merely corroborated the direct testimony of one of the victims.'' (P. 407.)

The above analysis, we submit, sustains the conclusion that the trial court did not err in permitting the introduction of the testimony, but, even assuming its error, we cannot believe that any prejudice resulted to appellant. The case was neither complicated nor lengthy; it was concluded in one day. Belias's testimony did not work surprise or confusion. We do not find, from an inspection of the record, that a different result would be probable if appellant were to be granted a new trial. (Cal. Const., art. VI, § 4½.)

We affirm the judgment.

Bray, P. J., and Duniway, J., concurred.